Please call the first case. May it please the court. I'm Doug Hoff. I'm with the State Appellate Defender's Office. I represent the appellant Alejandro Alvarado. I would like to focus my argument today on the issues raised in issue one in the appellant's brief and in the supplemental brief. May it please the court. Can I just ask one question before you begin? Because there is certainly a difference in the theories in the first brief and the reply in the supplemental brief. So are you continuing to keep all the arguments in the first brief or are you abandoning them and just going on your supplemental brief? We're not abandoning any arguments. I believe we raised three issues in the opening brief. The Second Amendment issue, an ineffective assistance of counsel claim, and a one act, one crime claim. And then in our supplemental brief we raised the equal protection argument. The interesting thing is if you print out the U.S. Supreme Court's decisions in Heller and McDonald, you have about 73 pages, dual column, small type, and those are just the majority and the plurality opinions. And this is 73 pages of very dense, very thorough textual and historical analysis of the meaning of the Second Amendment. What it says and what it means. Basically for the first time ever, really, the highest court has given us and has looked into what the meaning is of the right to keep and bear arms. Do 14 year olds carry guns? They're minors. They don't traditionally have all the rights possessed by adults. Some adults don't have all the rights possessed by other adults. They can't drink. Yeah, and there is no constitutional right to drink. I mean, perhaps there should be, but there isn't. Here we have an enumerated right under the Constitution. And I think if Heller stands for anything, anything at all, is that it elevated the Second Amendment into the ranks of the other enumerated rights. I mean, obviously it was there already, but it made very clear that the Second Amendment is like the First Amendment, like the Fourth Amendment, like the Fifth Amendment, like the Sixth Amendment. That these are at the core of our constitutional protections. And nobody would say, really, that you only have the First Amendment rights inside your house, that you only have your Fourth Amendment rights inside your house, that you don't have the right to freedom of religion as long as you don't take it outside, or freedom of expression, so long as you don't keep it within the walls of your house. The Fourth Amendment protects us from unreasonable searches and seizures, not only in our homes, but in our persons. Unreasonable to require people to get FOIA cards? That is not one of the things that we've got going here today. We're not challenging the FOIA requirement per se. And the Supreme Court actually... Yes, you are. Yes, you are. Yes, you are. Well, we are challenging the fact that people 18, 19, and 20-year-olds can't get FOIA cards. Of course they can if their parents signed for them. If their parents signed for it and if their parents themselves are eligible. And in fact, if they can get a FOIA, I mean, they can utilize hunting weapons, for example, even below the age of 18. I didn't see a cutoff time in that, a cutoff age limit that would allow a person to possess a weapon, as long as the parents were eligible to receive a FOIA card. That's true.  That's true. So then, why would not this, your argument, extend to a 13-year-old with a weapon on the street? Or a 12-year-old, for that matter? Because 18, 19, and 20-year-olds are adults. They can vote, they can serve in the military, they can serve in juries, they can be conscripted. They are, by statute, members of both the Illinois and fed militias of the United States and the state of Illinois. And also, I mean, this is the way that the Heller Court approached the Second Amendment. We looked at the meaning of it when it was enacted and when it was ratified. And we say, what did that mean at the time? And I think all the evidence here points to 18-year-olds being full rights holders for the purposes of the Second Amendment. You know, it was clear at the time that our first Congress enacted the Militia Act for the United States and said that the militia was constituted of all able-bodied males 18 to 45. And as Heller put forward, they said, you know, militia members were not only expected to show up themselves, but were frequently expected to bring their own weapons. So not only were 18-year-olds expected to perform militia service, they were actually expected to own weapons, to own firearms. But if you say that Heller clearly brought the Second Amendment to the ranks of the other enumerated rights, and those other rights are what? Oh, like the First Amendment, freedom of speech, freedom of religion. Religion. Sixth Amendment right to counsel. Wouldn't a 12-year-old have the right to freedom of religion? There are Supreme Court cases that say that 12-year-olds have the right. So then what is the distinction you're making in saying that Heller does not make it allowable for a 10-year-old to carry a weapon on the west side of Chicago? Well, I mean, the amendments themselves are, you know, individually interpreted. And the Supreme Court's already said in certain occasions that minors have some limited subset of our Bill of Rights. Here, under the analysis they put forward in Heller, you go back and you look. Would minors have the right to keep and bear arms at the time this was enacted? And the research that's been done, especially the research that's been done since Heller, suggests that this would certainly not be the case. Because the framers, in sort of the political parlance at the time, sought to protect the rights of what they would call the virtuous citizens. And this excluded the insane and minors. And I think a good argument can be made that it excluded felons as well. So the Second Amendment talks in terms of the people. So what are these people? These are the people who are essentially full citizens. And we certainly consider 18-, 19-, and 20-year-olds full citizens for most of the obligations. I mean, they can be required to serve on a jury that decides a death penalty case. They have to register for the draft. They certainly can be required to carry weapons in the military, in the militia, and also both of those things without parental permission at all. So, I mean, there is the cutoff line. These people are adults. They're not minors. I'm sorry. I didn't mean to interrupt you. Keller does say that we're going to assume the Second Amendment, of course, allows certain people to keep and bear arms. It says, all through that opinion in Heller and in McDonald, in talking about Heller, that it's keeping the right to keep and bear and keep arms in the home. How do you extend it beyond the home? How do you? What case says that you can extend it beyond the home? I mean, because you're saying it's a fundamental right. I think, and you can certainly tell me if you disagree, that Keller and McDonald say it's a fundamental right to keep and bear in the home. What says it's a fundamental right once you cross that threshold? Well, Heller itself talks, I mean, and this is a thread that runs all the way through the opinion. When they're talking about, I mean, the initial controversy in Heller was, you know, is this a personal right or is this a right sort of collective right for a militia person? And they said, you know, unequivocally that this was a personal right. And all through the discussion. Is your notion that our FOIA statute is unconstitutional? Just the provision that limits 18, 19, and 20-year-olds. I understand you mean the provision limits 18, 19. No one can carry a gun without that card. Sure. No matter what age they are. But. Is that constitutional? You can require a FOIA card. Okay. Well, if we can require a FOIA card, your client was convicted of two counts, one for carrying a gun without a FOIA card and two for carrying a gun under age 21 years of age. You've got to position your brief that says this is one act, one crime. If we vacate the conviction on count two, he still gets his two years probation and we don't have to address the constitutional issue, do we? That is exactly correct. Okay. So you get literally no relief. And we never have to address the Second Amendment issue? We are challenging under Second Amendment grounds both of the statutes. So requiring a FOIA card is illegal now? It's unconstitutional? You can require a FOIA card, but you can't say we require a FOIA card, but you can't get a FOIA card. Because you're 18, 19, and 20. You can have a FOIA card if it's a parental permission. Only with your parental permission and only if your parents actually qualify. So the way the FOIA Act is written is that the disabilities of the parents are passed down to the 18, 19, and 20-year-olds. And I think as we put forward in our brief that, you know, a girl who is... So it's not the UUW statute you have a complaint with. It would be the FOIA statute. Well, that was certainly the, I mean, the FOIA is an element of the UUW statute. Just you don't have a card? Yes. And if you can't get a card, obviously you can't have a card, so you're going to be convicted. Do we know he couldn't get a card? He cannot get a card without parental consent. Do we know he couldn't get a card? We don't know that he ever applied for a card. We're supposed to guess he couldn't get one? Well, if he had applied for one, it would have been futile without parental consent. And we're saying that you cannot condition the constitutional rights of an adult on the consent of another adult, parent, anybody. Why? If the right is not unlimited, why can't it? Well, there's a U.S. Supreme Court case law that says that if the state itself cannot impair the right, it can't delegate a veto to somebody else. I think the one case I did find was an abortion case out of Missouri where they actually gave the father the veto power over the wife having an abortion, and the Supreme Court said, no, you can't do that. Because you can't outlaw it yourself, you can't say somebody else can tell you not to do it. In a state condition, what type of firearm a person can own? Under Heller, they indicated that certain types of unusual or particularly dangerous weapons, the sorts not typically carried by law-abiding citizens, machine guns, sawed-off shotguns, that sort of thing. So the right is not unlimited, then? Oh, no, no. We have never said that the right is unlimited. So the question becomes then, I suppose, is there was a limitation on people under age 21 carrying a firearm if it serves a legitimate state purpose. Well, that is the actual rational basis argument. And the Heller court specifically ruled out the rational basis argument that was raised. If it's a fundamental right to carry a weapon outside of the home. And I think if we look, if we go back to that, if we look at what the Heller court was actually doing, all the way through this opinion, once they said it was a personal right, and in the analysis, bringing them to the conclusion that this was a personal right, they talked about, you have the right to bear arms inside the home. That was, I mean, that was the statute at issue. But that was the rule. The rest was discussion. I guess that gets us to Dawson and Williams, doesn't it? And I understand, we have not only the holdings in that case, we have the analysis they used to get to those holdings. And if you look at that analysis, I think it's crystal clear that they were talking about the right to bear arms for self-defense of person and property. Now, obviously, our persons are not always on our property. So if you're going to have the right to bear arms in self-defense of your person, that has to go beyond the front door. And frankly, I mean, I don't think that should be too much of a surprise, considering that it is a constitutional right, and none of our other constitutional rights are just limited to arms. You don't see a distinction between the right to bear arms to protect your property and turning the streets of the city of Chicago into the OK Corral? You don't see any difference between those two, do you? Well, I would say, actually, that we have a lot of OK Corral going on right now. Yeah, but it's illegal. You want to make it legal? Certainly not.  I don't know, but they could all just wear their guns. No, on the outside. They could all walk around the street wearing gun belts. That's your theory. That's all OK. That seems to be what the Heller court was saying. You really think they said that? The case law they cited to me upheld restrictions on carrying concealed weapons and struck down bans on open carry. When they were talking about this being a personal right. Struck down bans? I couldn't hear you. Sorry. There are two particular cases that Heller cited to. Nunn v. State and State v. Chandler. When they were looking into the meaning of the Second Amendment, they were saying, you know, they cited these cases as examples of what they were talking about, as far as the meaning of this amendment being. And in both of those cases, they struck down bans on carrying concealed weapons and they upheld open carry. Now, certainly, you know, we are not challenging the Floyd statute per se. And we can certainly uphold licensing restrictions. The case law seems to be trending that way. Not in Illinois, it doesn't. It's not trending that way in Illinois. We're one of two states that don't permit any concealed carry. Illinois and Wisconsin. Well, we don't. Under any circumstances, other than policemen. I think the analysis in Heller is probably indicating that banning concealed carry is fine. Open carry with a licensing requirement would probably be fine, too. Okay. And again, this is, people talk in terms of extending Heller. I'm going to wrap this up real quick. This is not extending Heller. This is applying what Heller said to this case. And the entire course of Heller was, you have the right to bear arms for self-defense. And it's your person and your property. The whole thread through this, everything they cited to, nothing suggested that this was going to be limited to the home. Yes, the case they decided concerned a complete gun ban is inside the home. They had no occasion to decide anything else. They couldn't issue an advisory opinion on every possible scenario. That's not their job. They did give us some signposts on which way this was going, though. And it is, it seems clear to me, and I think it is clear, from both the Heller and MacDonald opinions, that this amendment is not a second-tier amendment that somehow only applies inside your house. Counsel, you'll have some brief rebuttal. You'll have short rebuttal. And let me, before I forget, when you come back, I'd like you to tell me what standard of review that you think we should apply. Strict scrutiny, intermediate scrutiny. Okay, thank you. Heller? Can you please, the court? Counsel? I'm Assistant State's Attorney Connor Fleming, and I represent the people of the state of Illinois. Your Honors, at its core, this case involves a defendant who was on a public street in visible possession of a handgun, who is now challenging the constitutionality of Illinois's aggravated unlawful use of a weapon statute. This court should affirm defendant's convictions for three reasons. First, this court should not address defendant's as-applied constitutional claim, because defendant failed to litigate that issue on the trial level. Second, there is no fundamental right that is impinged upon by the Illinois statute in question here. And third, if this court does choose to address defendant's as-applied claim, it should find the statute constitutional. Turning to my first point, Your Honors, this court should not even analyze defendant's as-applied constitutionality claim. Defendant's failure to litigate this claim at the trial level forfeits this issue. The Supreme Court held that a reviewing court such as this court is incapable of making a determination of the constitutionality of a statute as applied to a particular defendant when that defendant fails to raise the issue at a trial level. This was in the case of Henry Parentage v. John M., which was further citing the Supreme Court case of Reno v. Flores. The Illinois Supreme Court in 2010 affirmed this very ruling, reemphasizing that where there is no evidentiary hearing at the trial level, a constitutional challenge to a statute must be a facial attack at the appellate level. In what case? You said the Supreme Court, in which case? Yes, Your Honor. That was in LeBron v. Gottlieb Memorial Hospital. In this case, the defendant did not litigate the as-applied challenge at all at the trial level. The trial court in this case, which was the arbiter of facts, made no findings of fact regarding whether this particular statute, the Illinois Aggie UW statute, is unconstitutional as applied to a defendant who was an adult aged 20 years old but not yet 21 years old at the time of the offense. For that reason, this Court should not take on this issue and analyze the issue of whether this statute is unconstitutional as applied to adults who are aged 18 to 20 but not yet 21. Now, moving to my second point, Your Honors. There is no fundamental right that is impinged upon by the Illinois Aggie UW statute. The defendant emphasizes Heller and McDonald in claiming that the Second Amendment right, which is a fundamental right to bear arms, is violated by the Illinois statute. However, a close reading of Heller and McDonald and subsequent cases demonstrates that the Second Amendment right is not infringed upon by this instant statute. In Heller, the Supreme Court defined the Second Amendment right to bear arms in a very limited manner. The Court went through a deep historical analysis in discussing the origins of the right to bear arms. And while it is true the Court discussed the right to bear arms in the context of fielding a militia and in the context of self-defense, the actual holding of Heller was very clear. The Second Amendment right to bear arms is limited to the right to bear arms for the purpose of self-defense while in the home. Is that really what Heller said? Absolutely, Your Honors. Or do you think they said it was unconstitutional to prohibit a person from carrying arms within their home to protect their home because of the fundamental right in the Second Amendment? I don't think Heller does. Your Honor. Heller says that the statute or the ordinance was unconstitutional, which prohibited even within the home, and he was arrested within the home, because of the fundamental right in the Constitution. So your theory is that the fundamental right in the Constitution is limited to carrying a gun in your house? Your Honor, you're absolutely correct in that the Heller Court found a federal statute which the effect of the statute was to outright prohibit the possession of firearms in the home as unconstitutional because for the reason that it violated the Second Amendment right to bear arms. But in order to get to that position and rule on the constitutionality of that federal statute, the Court did have to define the Second Amendment right to bear arms, and the Court was specific in stating that the Second Amendment right to bear arms, the extent of this right, is the right to bear arms in the home and for the purpose of self-defense. That's illogical. If the Supreme Court were to hold that the right to bear arms is unlimited, then they would certainly strike down a statute where a man was arrested for carrying it within his house, wouldn't they? That's correct, Your Honor. Now, if the Constitution says you have a right to bear arms in your house, then in that particular case, they wouldn't strike down statutes that prohibit you from carrying it in the street, would they? It doesn't say it's limited to carrying arms within your house. It says the freedom of the people to bear arms will not be abridged. So they only had it decided within the context of carrying within the house. They didn't define the Second Amendment by that. Respectfully, Your Honor, the Court did define the Second Amendment as a limited right. No right is unlimited. Well, the question is limited. The question is, is the limit constitutional? That's the issue. Your Honor, the limit in this case is, as far as the Illinois statute is concerned, the limit on the possession of firearms is constitutional because the Illinois statute specifically and expressly permits the possession of firearms in the home. The statute itself reads that firearms... So why is the limited prohibition against carrying arms outside of your house if you are under 21 unconstitutional? Why isn't it? Why is it constitutional? Why is the limit permitted? Because, Your Honor, in this case, the prohibition does not go as so far as to obliterate the right to bear arms. The statute expressly permits the right to bear arms in the home, the abode, or a fixed place of business. The issue in Heller was that the effect... That's not my question. My question is, why is the limitation, the age limitation, outside of the house constitutional? Your Honor, in this case... Why does the government have the right to impose that limitation? I understand. Let me move then to my third point, Your Honors, and that is the point that this statute, as applied to the defendant, which involves the age limitation, is nevertheless constitutional. In this case, if this Court does review that very claim involving adults who are aged 18 to 20, this Court should find that a prohibition that further limits their rights is constitutional. The Supreme Court has stated that age in itself is not a suspect class, Your Honors, and because age is not a suspect classification, there should not be heightened constitutional review in this case. The law, appropriately, limits the right of individuals who are aged 18 to 20 to possess a firearm.  The law, Your Honor, is replete with instances of the legislature exhibiting a heightened concern for individuals who are of young age or who are aged 18 to 20 but not yet 21. For example, the Juvenile Court Act in Illinois allows minors to be incarcerated until age 21, even though they turn adults at age 18. Again, as cited in the opposing counsel's argument, the drinking age in the country is 21 years of age. These instances show the recognition that adults who are aged 18 to 20 but are not yet age 21 are not fully matured adults, and this exhibits a heightened concern to keep a protective eye on individuals who are not yet 21. Now, critically, drawing this distinction based on age is not a suspect classification that would trigger heightened constitutional review. Because heightened constitutional review is not appropriate, because this is an age distinction, Your Honors, this Court should analyze whether the Ag UUW statute in Illinois is constitutional under rational basis review. This Court should find that under rational basis review, the Illinois statute is constitutional. In fact, this very Court did find that in People v. Dawson in 2010 when it analyzed the constitutionality of the aggravated, unlawful use of a weapon statute under rational basis review and found that the restrictions present in the statute, including the age restriction and the Floyd restriction, were rationally related to a legitimate, if not compelling, state interest in protecting individuals from gun violence and protecting the police force from gun violence. However, even in this case, if this Court does decide to analyze the age restrictions under heightened constitutional review, the Illinois statute would pass muster under either intermediate scrutiny or strict scrutiny. Certainly, the age restrictions present in the statute are narrowly tailored to achieve the compelling government interest in public safety and the suppression of gun violence. However, the age restrictions are specifically necessary because they serve an important deterrent function that other punishments, which punish the possession of weapons after the fact, cannot serve. This is a proactive measure that limits the ability of young adults to possess firearms legally and, therefore, is necessary in the determination of, or in the prevention of, possessing and prohibiting gun violence. Your Honors, now moving back to my second point, the age restriction in this case is not only constitutional, but it is necessary and under rational basis review or heightened scrutiny would pass muster. But getting back to the core of the Second Amendment itself, Heller and McDonald spoke of the Second Amendment and the importance of the Second Amendment in not infringing upon the right to bear arms, specifically when statutes, in effect, ban possession of the firearms in the home. In this case, as indicated before, possession of firearms was never banned in the home by the Illinois Aggravated and Lawful Use of a Weapon statute. Rather, it was expressly permitted. Again, because the Second Amendment is not infringed upon this right to bear arms by the Illinois statute, this Court should analyze the constitutionality, again, of the statute in terms of the Second Amendment. Now, this is distinct and separate from the age requirement, but in terms of a facial challenge, this Court should analyze the constitutionality of the statute in terms of the Second Amendment, again, under rational basis review because, critically, the Second Amendment right to bear arms was not infringed upon by this statute. Where a fundamental right is not infringed upon, a statute should be analyzed under rational basis review. Again, I turn to Dawson, and this Court specifically analyzed this statute, the Illinois Aggravated and Lawful Use of a Weapon statute, under rational basis review. In Dawson, the Court spoke of other cases that previously analyzed the Aggravated and Lawful Use of a Weapon statute, such as People v. Graves and People v. Williams. In all of those cases, the Court found that the right to bear arms is not infringed upon by the statute, and specifically, Dawson analyzed the Second Amendment right to bear arms as defined by Heller and McDonald and found, again, as the people submit in this case, that the right to bear arms in the Second Amendment was defined narrowly in Heller, and it was defined so that the right to bear arms was defined as the right to bear arms in the home and for the purpose of self-defense. Dawson found that this right was not triggered or impinged upon by the Illinois statute, which expressly permits the right to bear arms in the home. Dawson found that the restrictions present in the Aggie UW statute were not overbearing or did not go so far as to obliterate the right to bear arms, unlike the statutes in Heller or McDonald, which, in effect, did ban possession of the firearms in the home. Your Honors, because no fundamental right was impinged upon by this statute, and because this Court should first not analyze defendants as applied claim, but even if it does find that the age restrictions are rationally related to a legitimate government purpose, and therefore the age restrictions, too, are constitutional, this Court should... not end effective assistance of counsel for defense counsel to let in the information about the gang relationships. Your Honor, there was no effective assistance of counsel in this case. In order to demonstrate ineffective assistance of counsel, it's the defendant's burden to show that the trial attorney's performance was so deficient that it fell below an objective standard of reasonableness, and second, that the defendant was prejudiced by the trial counsel's representation. Counsel, even at the beginning of the trial, there was concern exhibited that to keep information about gang affiliations out of the trial, and the Court ruled that that would be done. And then, in the cross-examination of defense counsel, he opens the door and allows all of that testimony in. That's correct, Your Honor. Why was that not an effective assistance of counsel? Trial counsel's opening the door of that testimony, Your Honor, was actually an effective trial strategy in this case. There was a motion in limine in this case that limited the testimony that would come out of trial, specifically limiting the people from bringing up the defendant's purpose of being on the street, which the people submit was a retaliation in gang violence because the defendant had been shot at days earlier. That was banned from the people's case-in-chief. However, as Your Honor highlights, the trial counsel brought that up, and trial counsel elicited that testimony specifically to call the credibility of Officer Cahew, who was the state's witness in that case, into question. Trial counsel knew that defendant was going to take the stand in this case at that time, and the record reflects that the defendant testified that he was never on the street and that he did not possess a firearm. Thus, questioning Officer Cahew about whether defendant was on the street, what statements the defendant made, and what the defendant stated his purpose was for was done for the purpose of later being able to show that Officer Cahew's testimony was not credible or even fabricated. Thus, it was an effective strategy to elicit that information when trial counsel knew later on that he would attempt to show that his client was not actually on the street. Now, whether trial counsel was ultimately successful in demonstrating that is a different issue, and in this case, the trier of fact found that Officer Cahew was a credible witness, and beyond a reasonable doubt, the defendant was the individual on the street in possession of a gun. However, just because the strategy was not ultimately successful does not mean that this Court should second-guess that strategy or find that strategy ineffective. In fact, in People v. Hamilton, the Court has found that counsel must be presumed effective under an ineffective assistance of counsel, and second, in People v. McKendrick, this Court found that simply because the counsel may have pursued a better strategy at trial or could have pursued a better strategy at trial, counsel shouldn't be presumed ineffective simply because it was a matter of trial strategy or judgment that was called into question. If there are no further questions, for these and the foregoing reasons, the people respectfully ask that this Court affirm defendants' two convictions for aggravated and lawful use of a weapon. Thank you, Your Honor. Short rebuttal. Just briefly, Your Honors. Justice Lamkin asked me about levels of scrutiny as far as the Second Amendment challenge goes. Sorry, I'll speak up. On our equal protection challenge, the established case law says that if a statute creates a classification that burdens a fundamental right, it is subject to strict scrutiny. Heller made it very clear, and the State has conceded, that this is a fundamental right. So, therefore, it is subject to strict scrutiny under the equal protection analysis. Now, under the Second Amendment analysis itself, the Heller Court definitely threw out rational basis. Traditionally, enumerated rights are subject to strict scrutiny, and we would say this is definitely an enumerated right in the Bill of Rights. But the way Heller analyzed the case and the way it seemed to be suggesting that they would go forward is categories, that there would be things that were outside Second Amendment protection, and those would receive, those were per se permissible. But if there were things that were inside Second Amendment protection, there was not a subsequent balancing test that they would enact. It's just, if this was protected by the Second Amendment, it could not be prohibited by statute. I've kind of analogized it in my own mind to the Crawford Confrontation Clause analysis. They don't, what they, what the Supreme Court has told us to do is, is this hearsay that was introduced testimonial? Because testimonial is a testimonial. Testimonial is what's prohibited by the Confrontation Clause. Now if it's testimonial, you can't bring it in. There's no subsequent balancing test after that. But if it's not testimonial, it can come in. So that's, that's, the way Heller is looking, the way it put forward its analysis was this categorical approach. It's an either-or situation rather than a balancing test, which Justice Scalia said, people have already done the balancing here. The framers did the balancing. The people who, the voters who ratified the Second Amendment did the balancing. It was up to them to decide whether this was a right that was worth protecting. It's not up to legislatures, it's not up to judges right now to balance away rights that they gave us. I'm not sure if I'm understanding you, so just humor me, because it's just not like you said, if we say there is not a fundamental right or a Second Amendment right to bear arms outside of the home, then that's the end of the... If this is not, if this is not protected by the Second Amendment, then we go back to rational basis. Oh, I see. All right. Yeah. Because, but the, Heller's argument, Heller's report said explicitly, rational basis does not apply to things that are protected by the Second Amendment. And briefly, just regarding the facial challenge waiver argument that the state brought up, the second... It has applied. Oh, excuse me, it has applied. The second sentence in our opening brief says we are raising a facial challenge to these statutes, not an as-applied challenge. But even if we were, you know, the state actually hasn't told us, you know, well, what kind of hearing should we have had, what kind of findings of fact should there have been? I mean, we had a hearing, it was a jury trial. We had findings of fact. He was found guilty. We're saying the statutes under which he was convicted that restrict the rights of 18, 19, and 20-year-olds to bear arms are unconstitutional on their face. So there, the state spent a lot of time responding to an argument we didn't make. And very briefly with regards to the ineffective assistance claim, the trial strategy here was to keep the gang evidence out. Defense counsel not only did the question too many, really contradicting his own trial strategy, this was not a strategic decision, and this is not a matter of second guessing. Because we know what his strategy was. We know his strategy was to keep this out. But he opened the door to it and let it in. I know you said one question too many, but there were a series of questions that were very good. The defense counsel are the attorney asked. The attorney said, who did he say did it? It certainly appeared for me reading that he meant a named person. What's the name of the person? And the officer responded... A rival gang member. A rival gang member. So it wasn't for strategy. Maybe he should have said, did he say a name, yes or no? And then, but the strategy seemed in line with the trial strategy. But once he kept going after that, I guess that's what I'm saying. Once the cat was out of the bag, it's kind of hard to pull it back in. And you know, actually the answer is sort of ambiguous too. It says a rival gang member. It doesn't come out and explicitly say that the defendant was in a gang. It doesn't say Latin kings or... It doesn't say Latin kings. We certainly know what the answer is. But if you get a non-responsive answer, do you throw out the entire trial strategy from that point on? And I don't think it was reasonable to do so. Thank you counsel. This matter will be taken under advisement.